IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| John A. Daniels, Jr., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cv822 (CMH/IDD) |
| | ) | |
| Captain Flippen, et al., | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION

John A. Daniels, Jr., a Virginia inmate, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging claims of retaliation and endangerment based on his classification at Riverside Regional Jail ("RRJ"). On October 2, 2014, defendants Captain Dawn Flippen, Lieutenant Tara Wyche, and Sergeant Jamece Hobbs filed a joint Motion for Summary Judgment with a supporting memorandum. Dkt. 37, 39. Defendants also provided plaintiff with the notice required by Local Rule 7(k) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. 38. On October 10, 2014, plaintiff moved for the appointment of counsel, and his request was denied. Dkt. 41-42. On January 9, 2015, plaintiff filed a letter with the Court stating that he wished to "withdraw" this action without prejudice. Dkt. 43. The letter was construed as a Motion to Voluntarily Dismiss the action, pursuant to Fed. R. Civ. P. 41(a). As defendants had filed an Answer and Motion for Summary Judgment, they were directed to indicate whether they would stipulate to dismiss the action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). Dkt. 44. On May 14, 2015, defendants notified the Court that they did not so stipulate. Dkt. 45. Plaintiff has filed nothing further in the lawsuit. Accordingly, pursuant to Local Rule 7(K)(2) and Fed. R. Civ. P. 56(c), summary judgment will be entered for defendants on both of plaintiff's

claims.

## I. Background

Briefly, Daniels alleges claims of retaliation and endangerment based upon his removal from protective custody at RRJ. He asserts that he "was a confidential informant for the multi-jurisdictional state police narcotics task force for ... about 10 years" and has "court orders for protective custody" from several Virginia courts. Nonetheless, he was moved into general population at RRJ when he experienced "problems" with Sgt. Hobbs, and as a result his life was endangered.

Exhibits supplied by the defendants reveal the following uncontroverted facts. Daniels had been in and out of RRJ several times before he was received there on January 5, 2012. Pursuant to a notation in his file that protective custody had been "requested by Petersburg court," he was assigned to housing unit 2C, in protective custody. Hobbs Aff. ¶ 2; Wyche Aff. ¶ 2. Protective custody is for inmates who need protection from other inmates for health and safety reason. Flippin Aff. ¶ 2. In the latter part of 2012, Sgt. Hobbs was tasked with reviewing the status of all protective custody inmates in connection with the opening of new housing units at RRJ. As part of that process, plaintiff was reassigned to Classification B, in protective custody. In reviewing Daniels' classification status, Sgt. Hobbs could find no basis for the notation that the Petersburg court had requested protective custody status, and there was no protective custody order in effect. Nonetheless, while these efforts were ongoing, plaintiff remained in protective custody status. Hobbs Aff. ¶3.

On May 17, 2013, Capt. Flippin received a recommendation that plaintiff be placed in administrative segregation within the protective custody unit. This would mean that plaintiff

would be housed in a cell by himself within the protective custody unit. Flippin Aff. ¶ 2. The recommendation was based on numerous reports that plaintiff had been creating problems in the protective custody unit by fighting and being verbally abusive, intimidating and threatening to other inmates. Flippin Aff. ¶ 3. Capt. Flippin approved the recommendation and authorized plaintiff to be placed in disciplinary segregation for five days. Because investigation had revealed no reason for plaintiff to be housed in protective custody, and because he had been engaging in predatory behavior toward other protective custody inmates, it was ordered that he would then be moved to general population. Flippin Aff. ¶ 4.

On May 22, 2013, when an officer went to move plaintiff to general population, plaintiff refused to go. He was cited and found guilty of the disciplinary infraction of failing to follow directions of staff, and received a sanction of five days in lockdown. Plaintiff later claimed that his refusal to move to general population was the result of court orders that he be held in protective custody due to his work on the multi-jurisdiction narcotics task force. Flippin Aff. ¶¶ 5-6. He claimed, as he does here, that he had orders from the courts in Hopewell, Petersburg, Prince George and Chesterfield Counties that he should be maintained in protective custody. Flippin Aff. ¶ 5; Wyche Aff. ¶¶ 5-6, 10. Capt. Flippin assigned Lt. Wyche to investigate plaintiff's allegations, and Wyche determined that of those jurisdictions, only the Petersburg court had entered an order providing that plaintiff be held in protective custody "for as long as he is held to serve the sentence given herein." However, that sentence had expired on April 15, 2011, so the order was no longer in effect when plaintiff entered RRJ in January, 2012. Wyche Aff. ¶ 9. Both Chesterfield County Circuit Court and Colonial Heights Circuit Court confirmed that neither had ordered that plaintiff be held in protective custody. Wyche Aff. ¶¶ 7-8. Lt.

3

Wyche also determined that plaintiff had not been an informant for the multi-jurisdictional task force for many years, and that no basis existed for him to need protective custody in that regard. Wyche Aff. ¶ 10.

Nonetheless, despite the invalidity of plaintiff's stated reasons for not wanting to be placed in general population, officials at RRJ as an extra precaution did not transfer him there. Because plaintiff's predatory behavior in protective custody had ruled that out as a viable option, he was placed in administrative segregation. Flippin Aff. ¶ 6. Eventually, in September, 2013, plaintiff agreed to enter into a Behavior Contract, which included his agreement not to threaten, verbally abuse, or fight with inmates or staff, and he was returned to protective custody that same day. He remained in that status until he was transferred from RRJ to another institution in January, 2014. Id. Contrary to plaintiff's allegations in the instant complaint, he was never housed in general population at RRJ at any time during his incarceration there. Wyche Aff. ¶ 4.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create

disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

At this juncture, it is apparent that plaintiff cannot prevail on either of his claims. The uncontroverted evidence supplied by defendants demonstrates that plaintiff suffered no harm during his incarceration at RRJ. He was not harmed by any other inmate, he was not harmed as the result of his housing assignments, and he suffered no harm as the result of any action taken by any of the defendants. That fact alone is fatal to both of his present claims. Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994) (claim of deliberate indifference to inmate's safety based on his cell assignment dismissed where plaintiff suffered no harm from the alleged indifference).

To prevail on a claim of retaliation, a plaintiff must show that the allegedly "retaliatory

act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right." Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). In addition, he must demonstrate that exercise of some constitutional right was a substantial factor motivating the retaliation. See Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). Lastly, he must show a sufficiently adverse impact on a constitutional right as a result of retaliation. ACLU of Maryland, Inc. v. Wicomico, 999 F.2d 780, 785 (4th Cir. 1993). Where a plaintiff has not alleged an impairment of his constitutional rights, "there is no need for the protection provided by a cause of action for retaliation," therefore, a showing of adversity is essential to any retaliation claim. Id. Finally, plaintiff must demonstrate that prison officials' actions did not advance legitimate penological objectives. Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D.Va. 1997) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). Here, plaintiff has failed to satisfy any of these criteria, so defendants are entitled to summary judgment on his claim of retaliation.

As to plaintiff's endangerment claim, the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). However, to establish a § 1983 claim for failure to protect, a plaintiff must show: (1) "serious or significant physical or emotional injury," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); and (2) that the prison officials had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (internal quotation marks omitted); Odom v. S. C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003). As to the first prong, "[o]nly extreme deprivations are adequate," De'Lonta, 330 F.3d at 634, and the the deprivation must be "objectively, sufficiently serious." Odom, 349 F.3d at 770, quoting Wilson, 501 U.S. at 298. As to the second, prison officials must be shown to have exhibited

"deliberate indifference" to the inmate's health or safety. <u>Farmer</u>, 511 U.S. at 834. Here, defendants have demonstrated both that plaintiff suffered no harm whatever during his incarceration at RRJ and that they were anything but deliberately indifferent in his health and safety during that tenure. Accordingly, they also are entitled to summary judgment on plaintiff's claim that his Eighth Amendment rights were violated due to endangerment.

## IV. Conclusion

For the foregoing reason, defendants' Motion for Summary Judgment will be granted, and final judgment will be entered in their favor. An appropriate Order and judgment shall issue.

Entered this 20th day of July 2015.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia